IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH  DIVISION

UNITED STATES of AMERICA                              PLAINTIFF/RESPONDENT

V.                                        No.  10-20057
                                          No.  12-02266

URIEL LIRA-PEREZ                                      DEFENDANT/PETITIONER

REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus

Petitions, *See ECF No.* 263 filed November 6, 2012, under 28 U.S.C. §2255.  The Government

filed its Response, *See ECF No.* 267 on December 4, 2012, and the Petitioner filed his Reply, *See*

*ECF No.*  269 on January 4, 2013.

**I.  Background**

Uriel Lira-Perez ("Lira-Perez" was arrested on October 22, 2010, on a Federal Criminal

Complaint charging him with conspiracy to distribute methamphetamine. (ECF No. 1). On

October 25, 2010, Lira-Perez made his initial appearance waiving the issue of probable cause and

detention. (ECF No. 4). Naif S. Khoury was appointed to represent Lira-Perez. (ECF No. 11).

Lira-Perez was named in Count One of four-count Indictment returned by the Grand Jury

for the Western District of Arkansas on November 4, 2010. (ECF No. 42). Counts One charged

that Lira-Perez with conspiracy to distribute more than 50 grams of methamphetamine.

On November 30, 2010, Lira-Perez appeared with retained attorney Floyd W. Shumpert

for arraignment and entered a not guilty plea as to Count One. (ECF No. 73). On December 13,

2010, attorney Naif S. Khoury filed a motion to withdraw as Lira-Perez's attorney. (ECF No. 94).

The Order granting Mr. Khoury's motion was filed on December 14, 2010. (ECF No. 95).  A seven-count Superseding Indictment was filed on January 13, 2011, in which Lira-Perez was charged in Counts One and Five. (ECF No. 108). Count One charged Lira-Perez with conspiracy to distribute more than 50 grams of methamphetamine and Count Five charged him with illegal re-entry into the United States.

On February 8, 2011, Lira-Perez appeared with attorney Floyd W. Shumpert for arraignment and entered not guilty pleas as to Count One and Count Five. (ECF No. 133). On April 5, 2011, attorney Floyd W. Shumpert filed a motion to withdraw as Lira-Perez's attorney. (ECF No. 144).

On April 18, 2011, a motion to substitute attorney and motion to continue was filed by Lira-Perez. (ECF No. 149). On April 25, 2011, the Court granted attorney Floyd Shumpert's motion to withdraw, granted the motion to substitute attorney with Naif Khoury, and granted the motion to continue resetting the jury trial for August 23, 2011. (ECF No. 152).

On July 20, 2011, Lira-Perez appeared with counsel Naif Khoury for a change of plea hearing before the Honorable Robert T. Dawson. (ECF No. 175). A written Plea Agreement was presented wherein Lira-Perez would plead guilty to Count One of the Superseding Indictment. (ECF No. 176). The Court reviewed the Plea Agreement with Lira-Perez and he was advised of rights and the penalties were set forth. A factual basis was set forth to which Lira-Perez agreed and, after finding Lira-Perez's plea to be voluntary, the Court tentatively approved the plea agreement pending completion of a Presentence Investigation Report ("PSR"). (ECF No. 175).

On September 21, 2011, the United States Probation Office in the Western District of Arkansas prepared Smith's initial Presentence Investigation Report ("PSR"). The United States

-2-

offered no objections, however, on October 14, 2011, Lira-Perez offered nine objections. (Add. to PSR).

On October 24, 2011, a revised PSR was issued. In the Addendum to the PSR, the probation officer responded to Lira- Perez's objections making one change to Paragraph 24. (Add. to PSR).  The PSR assessed a Base Offense Level of 32. (PSR, ¶ 30). Lira-Perez received a 2-point adjustment for his role in the offense resulting in an adjusted offense level of 34. (PSR, ¶¶ 33, 35). Lira-Perez received a 3-point reduction for acceptance of responsibility (PSR, ¶¶ 37, 38) resulting in a total offense level of 31. (PSR, ¶ 39). Based on a Total Offense Level of 31 and Criminal History Category of I, Lira-Perez's resulting advisory guideline range was 108 - 135 months imprisonment. (PSR, ¶ 57).

On December 1, 2011, Lira-Perez appeared for sentencing. (ECF No. 215). The Court sentenced Lira-Perez on Count One of the Superseding Indictment to 108 months imprisonment, 4 years supervised release, a $1,000 fine, and a $100 special assessment. (ECF No. 218). Count Five was dismissed on motion by the United States.

On December 9, 2011, Lira-Perez filed a timely notice of appeal. (ECF No. 220). On Appeal, Lira-Perez's counsel filed an Anders brief while Lira-Perez filed a pro se brief. In his brief, Lira-Perez argued (1) the district court erred by failing to properly advise him of his constitutional rights which resulted in an unknowing and involuntary guilty plea and (2) 21 U.S.C.  §§ 841 & 846 are unconstitutional in light of Apprendi v. New Jersey, 530 U.S. 466 (2000). The Eighth Circuit disagreed with Lira-Perez and on June 28, 2012, filed its opinion affirming the judgment of this Court. *United States v. Lira-Perez*, No. 11-3728, 2012 WL 2428919 (8th Cir. Jun. 28, 2012).

-3-

On November 6, 2012, Lira-Perez filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "§ 2255 Motion") alleging six claims of relief premised on ineffective assistance of counsel, that his status as an alien entitled him to a downward departure, and that his indictment was defective. (ECF No. 263).

## II.  Discussion

The Defendant first contends that his attorney was ineffective in a number of areas.

### A.  Ineffective Assistance of Counsel

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255.  *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000);  2254. *Cox v. Wyrick,* 642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*,

-4-

539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

Also, to the extent that Petitioner's claims arise out the plea process, he must show a

-5-

reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997).

### 1. Failure to Investigate

The Petition states that if his attorney "had performed as indicated Petitioner would have been exonerated." (ECF No. 263, p. 7).

Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Whitmore v. Lockhart*, 8 F.3d 614, 618-19 (8th Cir.1993) (*quoting Strickland*, 466 U.S. at 691). "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'" *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir.1996) (*quoting Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir.1994)).

The Petitioner has not stated what his attorney should have done or who were the witnesses he desired him to call or what they would say. He has merely made a conclusory statement that his attorney failed to make a through investigation. Vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255. *See Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir.). *See also Smith v. United States*, 677 F.2d 39, 41 (8th Cir.1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal).

### 2. Failure to Move for a Speedy Trial

The Petitioner next contends that his attorney was ineffective for "failing to move for a

speedy trial."  (ECF No. 263, p. 9)

Under the Speedy Trial Act, a defendant must be brought to trial within seventy days from the indictment or the first appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). If the defendant is not brought to trial within this period, the indictment must be dismissed on the defendant's motion. Id. § 3162(a)(2). Excluded from the seventy-day limit are delays granted for certain specific reasons. Id. § 3161(h).

In Lira-Perez's case, his initial appearance and arraignment hearing with respect to the original Indictment was held on November 30, 2010, and the speedy trial calculation began to run on December 1, 2010. (ECF No. 73). Forty days later, the Court granted separate defendant Margarito Lira-Ibarra's motion to continue after being advised the United States and co-defendants had no objection. (ECF No. 106). In finding the "ends of justice served by granting the continuance outweigh the best interests of the public and Defendants in a speedy trial," the Court excluded the time between January 27, 2011, to April 26, 2011, for speedy trial purposes. (Id.). The time between December 1, 2010, and January 27, 2011, equaled 57 days for speedy trial purposes.

Thereafter, on April 5, 2011, Lira-Perez's counsel, Floyd Shumpert, filed a motion to withdraw and on April 8, 2011, Lira-Perez filed a motion for continuance. (ECF Nos. 144 &145). On April 18, 2011, attorney Naif Khoury filed his motion to substitute and motion for continuance. (ECF No. 149). On April 25, 2011, the Court entered its Order granting the substitution of counsel and Lira-Perez's motion for continuance basing its decision on finding that the "ends of justice served by granting the continuance outweigh the best interest of the public and Defendants in a speedy trial, because otherwise the defendant's counsel would be

-7-

denied the reasonable time necessary for effective preparation . . ." (ECF No. 152). The Court excluded the time between the trial date of April 26, 2011, and the reset trial date of August 23, 2011. (Id.). In any event, because only 57 days elapsed under the speedy trial clock, Lira-Perez cannot prove either Strickland  prong.

For the Petitioner's attorney to have raised a speedy trial argument would be meritless. It cannot be ineffective assistance not to raise a meritless argument. *Larson v. U.S.*  905 F.2d 218, 219 (C.A.8 (Minn.),1990).

### 3.  Constitutional Violation Against the Guilty Plea

The Petitioner next contends that his attorney was ineffective "for failing to properly address Petitioner's constitutional and Rule 11 rights.  This is because the failure to properly advise Petitioner of **<u>Koykin</u>** trial rights, and pursuant to Rule 11, guaranted (sic) to him by the Fifth and Sixth Amendments, resulted in an unknowing, involuntary and invalid guilty plea, in violation of the Due process Clause and the Fifth Amendant (sic)." (ECF No. 263, p. 11)

The Petitioner's contention in this regard is almost unintelligible but it appears to go to his claim of innocence at the time of sentencing.  His argument may be interpreted as a claim of ineffective assistance of counsel because his attorney did not, at the time of sentencing, make a motion to withdraw his previous plea of guilty.

A defendant may withdraw a guilty plea after the court accepts the plea but before it imposes the sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed.R.Crim.P. 11(d)(2)(B).  While the "fair and just" standard in Rule 11 is a "liberal standard," this Court has also been clear that the Rule does not create an automatic right of withdrawal for defendants. *United States v. Kelly*, 18 F.3d 612, 618 (8th Cir.1994).

-8-

"While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir.1997) (internal citations omitted).  "The plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom." *U.S. v. Morrison*, 967 F. 2d 264 (quoting *United States v. Woosley*, 440 F.2d 1280, 1281 (8th Cir.1971)). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, 'the occasion for setting aside a guilty plea should seldom arise.' " *Id.* (quoting *United States v. Rawlins*, 440 F.2d 1043, 1046 (8th Cir.1971)).

At the sentencing hearing the court indicated that the Plea Agreement contained a provision for the "third acceptance of responsibility point."  The government acknowledged that it did and made a motion in open court to grant the Defendant the addition point which was granted by the court. (ECF No. 225, p. 5). After the court granted the government's motion the Defendant made a statement in which he essentially denied his role in the crime. (Id., p. 24-27.). The prosecution then noted that it would not have made the motion for the third point for acceptance of responsibility if the defendant had made his statement previously.  The Defendant then stated: "As the prosecutor is saying, yes, I pled guilty from 50-500 grams, minimum five years, maximum 40, and that's why I pled guilty, but I want you to know that I didn't have one gram with me". (Id., p. 29, l. 7-10).

The Defendant is arguing, and the evidence shows, that at the time of arrest the Defendant DID NOT have any drugs on his possession.  The Defendant, however, was not charged with possession but with conspiracy to distribute more than 50 grams of methamphetamine and illegal

-9-

re-entry.  (ECF No. 108).   A defendant may not withdraw a plea ... merely because he

misunderstands how the sentencing guidelines will apply to his case. So long as the district court

tells a defendant the statutory range of punishment that he faces and informs him that the

sentencing guidelines will be used in determining the ultimate sentence, the plea is binding. This

is true even where the misunderstanding is caused by defense counsel's erroneous estimation of

what the ultimate sentence will be. *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th

Cir.2006). There certainly is no showing by the Defendant that there is a fair and just reason for

his attorney to have made a motion to withdraw his plea and any motion so made by his attorney

would have been meritless.  It cannot be ineffective assistance not to raise a meritless argument.

*Larson v. U.S.*  905 F.2d 218, 219 (C.A.8 (Minn.),1990).

### 4.  Failure to Ensure Factual Basis for a Guilty Plea

Under his fourth claimed error, Lira-Perez alleges his attorney was ineffective for

allowing him to plead guilty to conspiracy to distribute methamphetamine when there was an

insufficient factual basis for this plea.  (ECF No. 263, p. 11).

"To convict a defendant of [a drug] conspiracy, the government must prove beyond a

reasonable doubt the following elements: (1) there was a conspiracy with an illegal purpose, (2)

the defendant knew about the conspiracy, and (3) the defendant knowingly became part of it."

*United States v. White*, 241 F.3d 1015, 1022 (8th Cir.2001); accord *United States v. Rolon –*

*Ramos*, 502 F.3d 750, 754 (8th Cir.2007)

Lira-Perez entered into a written plea agreement (ECF 176, ¶ 2) in which he stipulated the

following facts were true and undisputed:

a. On October 19, 2010, agents with the Drug Enforcement Administration and the Sebastian County Sheriff's Office utilized a cooperating defendant to place controlled phone calls to a source of supply of methamphetamine he later identified as Uriel-Lira-Perez, the defendant. Two controlled phone calls went unanswered. At 8:24 pm, the cooperating defendant received a phone call from Uriel Lira-Perez. The cooperating defendant told Uriel Lira-Perez "I got everything for you, money everything. I need tonight, for sure two more pounds." Uriel Lira-Perez stated "OK." During the conversation, the cooperating defendant told Lira-Perez he had "mucho dinero." The cooperating defendant told law enforcement that he had obtained approximately two pounds of methamphetamine from the defendant, and those drugs had been distributed in Fort Smith.

b. Law enforcement conducted surveillance on the cooperating defendant's residence in Fort Smith, Arkansas. On October 20, 2010, at approximately 11:45 a.m., officers observed a silver Impala with Texas license plates arrive at the residence. A person identified as the defendant exited the passenger side of the vehicle, and Marcos Ramos-Chairez was identified as the driver. Both subjects were arrested.

c. Following the defendant's and Ramos-Chairez's arrest on October 20, 2010, officers employed a trained narcotics-detecting canine around the silver Impala. The canine alerted to the front passenger seat area of the vehicle, indicating the recent presence of narcotics. When the vehicle was searched by law enforcement, officers found a notebook in the passenger floorboard where the defendant has been seated. In the notebook were markings the officers recognized as "pay/owe" notes kept by those who sell narcotics. In the vehicle, officers also found a paper sleeve for a Days Inn electronic key card. Officers checked with the Days Inn on Garrison Avenue and the motel's records showed Room 217 had been rented on the night of October 12, 2010 for three guests. The defendant's actions constitute a violation of Title 21 U.S.C. §§ 21841(a), 841(b)(1)(B)(viii), and 846, as charged in Count 1 of the Superseding Indictment.

For the purposes of Rule 11(f) of the Federal Rules of Criminal Procedure, a factual basis for a plea of guilty is established when the court determines there is sufficient evidence at the time of the plea upon which the court may reasonably determine that the defendant likely committed the offense. *See United States v. Boucher*, 909 F.2d 1170, 1175 (8th Cir.), cert. denied, 498 U.S. 942 (1990).  The factual basis was sufficient for a plea of guilty and the Defendant has not stated with any specificity how the facts are inadequate.

-11-

**5.  Guilty Plea Improvidently Entered Through Faulty Legal Avise (sic) as a Persuasive Tactic of Inducement**.

The Defendant next argues that his plea was induced by his attorney because "he informed Petitioner that if he did not plea guilty, he would receive a life sentence and that he would be found guilty at trial". (ECF No. 263, p. 15).

The Plea Agreement Lira-Perez acknowledged he had read and understood contained the maximum term of imprisonment he faced, 40 years, and the mandatory minimum term of imprisonment he faced, 5 years. (ECF No. 176, ¶ 10(a) & (b)). Additionally, Lira-Perez represented that no promises, agreements, understandings, or conditions had been made or entered into in connection with his decision to plead guilty except for those set forth in the Plea Agreement. (ECF No. 176, ¶ 23(c)). Furthermore, Lira-Perez represented that he entered into the Plea Agreement freely, voluntarily, and without reservation and that his desire to enter into a plea of guilty was not the result of threats or coercion. (ECF No. 176, ¶ 23(e)).  *See United States v. Gray*, 152 F.3d 816, 820 (8th Cir. 1998) (rejecting claim of involuntary plea where defendant acknowledged he was pleading guilty of his "own free will" and denied any threats or coercion); *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (defendant's representations during pleataking carry strong presumption of verity)

In the guilty plea context, a lawyer need not give wholly accurate advice in order to render effective assistance; he need not correctly predict the admissibility of evidence or anticipate future judicial holdings. His advice, however, must be "within the range of competence demanded of attorneys in criminal cases." [FN7] McMann, supra, at 770-71, 90 S.Ct. at 1449. *U. S. ex rel. Healey v. Cannon*  553 F.2d 1052, 1057 (C.A.Ill. 1977).  Certainly a lawyer may

express his opinion to his client on the weight of the government's case and the penalty range but even if an attorney mistakenly represents the possible sentence that does not necessarily constitute ineffective advice. *See, e.g., United States v. Granados*, 168 F.3d 343, 345 (8th Cir.1999) (per curiam) (the defendant's reliance on an attorney's mistaken impression about the possible length of sentence was insufficient to render a plea involuntary as long as the court informed the defendant of the maximum possible sentence).

During the change of plea proceedings, the Court asked Lira-Perez whether anyone had made any promises or assurances to get him to execute the plea agreement to which he answered "no." (Change of Plea Tr., p. 5). The Court further asked Lira-Perez if anyone attempted to force him to plead guilty to which he also replied "no." (Change of Plea Tr., pp. 5 - 6). The Court then asked Lira-Perez if he understood that by pleading guilty he could face a maximum term of imprisonment for 40 years to which he answered "yes." (Change of Plea Tr., p. 6). The Court also informed Lira-Perez there was a mandatory minimum term of imprisonment for five years. (Id.).

There is no evidence that the Defendant was induced or forced into changing his plea.

### 6.  Failure to Responsibly Inform of Significant Immigration Charges

For his sixth claim of relief, Lira-Perez alleges that his counsel rendered ineffective assistance by not explaining the potential immigration consequences of his conviction and that he would not have pled guilty had counsel done so.

The Defendant was advised in open court at his arraignment of the immigration consequences of his conviction (ECF No. 73, p. 2) and the written Plea Agreement contained a provision addressing the deportation consequences of his guilty plea and stating that he has

-13-

discussed the consequences with his attorney.  (ECF No. 176, ¶ 9).

The Defendant's argument is without merit.

### 7.  Petitioner's Status as an Alien Does Entitle Him to a Downward Departure.

The Petitioner next argues that the result of his illegal immigration status has a disparate treatment between illegal aliens and United States citizens. Lira-Perez argues that because deportable aliens are ineligible for pre-release custody or minimum security confinement and drug programs, such limitations create unwarranted sentencing disparities. (ECF No. 263, p. 17).

Defendant contends that he might have been granted a downward departure because it was predictable, at the time of his sentencing, that the conditions of his incarceration would be adversely affected by his status as a potentially deportable alien. The Court recognizes that "alien status and the collateral consequences flowing therefrom may be an appropriate basis for departure." *United States v. Lopez-Salas*, 266 F.3d 842, 847 (8th Cir.2001). To justify such a departure, however, "there must be additional facts concerning the defendant's individual circumstances to make the particular case atypical or unusual." Id. at 848. *U.S. v. Birruetta-Arrellano*  L 3372953, 2 -3  (D.Minn.,2005). *See United States v. Charry Cubillos*, 91 F.3d 1342, 1344 (9th Cir.1996). (Sentencing courts were required to determine, "under the facts and circumstances of each case, whether the factor takes the case outside of the 'heartland.').

A defendant's status as a deportable alien does not automatically entitle him or her to a downward departure from the sentencing guidelines.  Rather, in departing downward, a sentencing court must determine, "under the facts and circumstances of each case, whether the factor takes the case outside of the 'heartland.' Defendant has not cited anything "atypical or unusual" about his particular circumstances, which might have entitled him to be sentenced

differently from other similarly-situated aliens facing the prospect of deportation. He has therefore failed to establish that he probably would have received a shorter sentence if his attorney had urged the Court to consider his immigration status at sentencing, which means that he has failed to satisfy Strickland's prejudice requirement.

### 8. Defective Indictment:

The Defendant next argues that his indictment was defective because there was not a fair notice of the type and amount of drugs specified in the indictment. (ECF No. 263, p. 18). This is the same argument that the defendant made in his Motion to Dismiss (ECF No. 256) filed August 6, 2012.

For the reasons set forth in the Report and Recommendation (ECF No. 260) and the Order Adopting the Report and Recommendation (ECF No. 262) entered September 19, 2012 this claim has no merit.

## B. Evidentiary Hearing

Finally, Petitioner does not state grounds sufficient to require an evidentiary hearing. An evidentiary hearing on a § 2255 motion must be granted unless the motion, files and records of the case establish conclusively that the petitioner is not entitled to relief. *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir.1998). "There is no requirement of a hearing where the claim [s] [are] based solely on vague, conclusory, or palpably incredible allegations or unsupported

generalizations." *Amos v. Minnesota*, 849 F.2d 1070, 1072 (8th Cir.), cert. denied, 488 U.S. 861, 109 S.Ct. 159, 102 L.Ed.2d 130 (1988). *Sidebottom v. Delo*  46 F.3d 744, 751 (C.A.8 (Mo.),1995)

### III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be dismissed with prejudice.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this January 29, 2013.

/s/ *J. Marschewski*

HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE  JUDGE